**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

JUL 31 2026

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNLOCKD MEDIA, INC. LIQUIDATION TRUST, by and through its duly appointed Trustee, Peter S. Kaufman,<br><br>Plaintiff - Appellant,<br><br>v.<br><br>GOOGLE LLC; GOOGLE IRELAND, LTD.; GOOGLE COMMERCE, LTD.; GOOGLE ASIA PACIFIC PTE, LTD.,<br><br>Defendants - Appellees. | No. 25-1869<br><br>D.C. No.<br>4:21-cv-07250-HSG<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Northern District of California
Haywood S. Gilliam, Jr., District Judge, Presiding

Argued and Submitted June 12, 2026
San Francisco, California

Before: NGUYEN and VANDYKE, Circuit Judges, and HUIE, District Judge.[**]

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable Robert Steven Huie, United States District Judge for the Southern District of California, sitting by designation.

Unlockd Media, Inc. Liquidation Trust ("Unlockd") appeals the district court's dismissal with prejudice of its Second Amended Complaint ("SAC"). The SAC alleged that Google LLC attempted to monopolize the "Digital Advertising Market," in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, by removing Unlockd's apps from the Google Play Store and terminating its access to Google AdMob for violations of Google's platform policies. We have jurisdiction under 28 U.S.C. § 1291. We review de novo a dismissal for failure to state a claim, accepting well-pleaded factual allegations as true but disregarding "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (simplified). Because the parties are familiar with the facts, we recount them only as necessary. We affirm.

1. To plead antitrust injury, a plaintiff must allege "an injury to competition beyond the impact on the plaintiffs themselves." *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1198 (9th Cir. 2012); *see also Somers v. Apple, Inc.*, 729 F.3d 953, 963–65 (9th Cir. 2013). The SAC's concrete, nonconclusory allegations concern only Unlockd's own exclusion from Google's platforms: Unlockd lost access to AdMob and the Play Store, could no longer operate, lost revenue, and went bankrupt. By contrast, its allegations of market-wide harm are conclusory and circular. Unlockd alleged that its exclusion deprived advertisers, consumers, and

2

publishers of an "alternative" form of digital advertising and that its continued operation "would have increased the total supply of digital advertising inventory." The elimination of a single competitor, without more, is not harm to competition of the kind antitrust law addresses. *See Somers*, 729 F.3d at 967; *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 734–36 (9th Cir. 1987); *Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 508–09 (9th Cir. 1989). Even assuming Google treated Unlockd unfairly, the Sherman Act protects the competitive process, not individual competitors. *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488–89 (1977).

2. The breadth of Unlockd's alleged market makes the required inference implausible. Convergence of injury to a single competitor and injury to competition is possible "when the relevant market is both narrow and discrete and the market participants are few." *Les Shockley*, 884 F.2d at 508–09. Unlockd alleged the opposite: a market for the sale of digital advertising inventory spanning at least the United States and potentially five other countries, containing numerous participants, and in which similar products continued to operate on the Play Store and AdMob after Unlockd's removal. It is not plausible, "in light of basic economic principles," that removing a nascent startup from such a broad market materially affected market-wide prices or output. *Coal. for ICANN Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d 495, 501 (9th Cir. 2010) (simplified). Nor does the

SAC plead "evidentiary facts" suggesting otherwise. *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047–48 (9th Cir. 2008). It contains no allegations about Unlockd's pre-removal market share, the total number or scale of remaining competitors, or any measurable effect on price, output, or consumer choice. *See id.*; *Brantley*, 675 F.3d at 1195–98, 1201–04; *Les Shockley*, 884 F.2d at 508–09.

Unlockd's allegation that digital advertising prices rose between 2018 and 2022 does not bridge the gap. The SAC supplies no basic information about the data underlying the alleged price increases—not even the geographic area or the kind of digital advertising covered. And Unlockd itself attributed the increase not solely to its removal, but also to Google's "other anticompetitive conduct." Rising prices during that period could simply be the result of increased market demand unrelated to Unlockd's exit. The SAC pleads no facts rendering its anticompetitive explanation plausible rather than merely conceivable. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 570 (2007); *Brantley*, 675 F.3d at 1198.

*PLS.com, LLC v. National Association of Realtors*, 32 F.4th 824 (9th Cir. 2022), is not to the contrary. There, an entrenched and dominant defendant in a discrete market adopted a policy expressly designed to foreclose new entry, with concrete market-wide effects on price, quality, and choice. *Id.* at 829–31, 840–41. The SAC alleged neither entrenched dominance in a narrow market nor any analogous entry-foreclosing rule or practice.

3. Nor can Unlockd rely on alleged harm to competition in other markets. The allegations Unlockd incorporated from the Department of Justice's complaint in *United States v. Google LLC*, No. 1:23-cv-00108 (E.D. Va.), concern different markets. "Antitrust injury requires the plaintiff to have suffered its injury in the market where competition is being restrained," and "[p]arties whose injuries . . . are experienced in another market do not suffer antitrust injury." *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1057 (9th Cir. 1999). The DOJ complaint challenges Google's practices in three ad tech infrastructure markets—publisher ad servers, ad exchanges, and advertiser ad networks—not Unlockd's alleged market for the sale of digital advertising inventory itself. Because Unlockd "did not identify any actions by Google that tended to harm competition in" its alleged market, the incorporated allegations do not establish antitrust injury. *Dreamstime.com, LLC v. Google LLC*, 54 F.4th 1130, 1143 (9th Cir. 2022).

4. *Ellis v. Salt River Project Agricultural Improvement & Power District*, 24 F.4th 1262 (9th Cir. 2022), does not assist Unlockd. Unlockd reads *Ellis* as conferring antitrust standing on any competitor "directly and economically hurt" by anticompetitive conduct, *id.* at 1274, but *Ellis* holds no such thing. There, we held that a utility customer adequately pleaded antitrust injury for two related reasons: he directly paid increased prices under the very pricing scheme challenged as anticompetitive, and those increased prices were not incidental to, but rather the

means of, the defendant's scheme to suppress solar-energy competition, making his injury "inextricably intertwined" with the harm the defendant sought to inflict on the market. *Id.* at 1274–75 (quoting *Blue Shield of Va. v. McCready*, 457 U.S. 465, 484 (1982)).

Neither aspect of *Ellis*'s reasoning applies here. Unlockd did not allege that it was a customer overcharged by the challenged conduct; it alleged that it was a competitor denied platform access.[1] Nor does Unlockd explain how its exclusion was, as in *Ellis*, the instrument of a scheme to suppress market-wide competition. *See id.* at 1267, 1274–75.

The "inextricably intertwined" doctrine also cannot cure Unlockd's failure to allege harm to competition in the relevant market: "there can be no synergistic result from a number of acts none of which show causal antitrust injury." *Dreamstime*, 54 F.4th at 1142 (simplified); *see also id.* at 1143 ("Whatever injuries Dreamstime may have itself suffered, Dreamstime is missing the necessary harm to

---

[1] To the extent Unlockd's briefing can be read to suggest that it suffered antitrust injury as a consumer of Google's ad technology services, *see PLS.com*, 32 F.4th at 832–33 (observing that "[b]usinesses that use a product or service as an input to provide another product or service" may qualify as consumers), it did not develop that argument, and it is forfeited. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003). More fundamentally, the operative distinction is not between consumers and competitors, but between isolated harm to an individual plaintiff and harm connected to the suppression of market-wide competition. Even assuming Unlockd could be characterized as a consumer of ad technology inputs, its allegations would still establish only its own exclusion, not an injury connected to suppressed competition in the relevant market. *See Brantley*, 675 F.3d at 1198.

competition in the relevant market with which Dreamstime's injuries are 'inextricably intertwined.'").  Even if the DOJ's markets overlapped with Unlockd's, the causal chain would still fail.  The conduct alleged in the DOJ complaint—Google's self-favoring among its ad tech products for web publishers, its acquisition of DoubleClick, and its manipulation of bidding protocols—bears no apparent connection to Google's enforcement of its AdMob and Play Store platform terms against Unlockd.  The markets are different, the conduct is different, and the causal chains are different.

In sum, Unlockd's injury, as pled, is not "the type the antitrust laws were intended to prevent."  *Brunswick Corp.*, 429 U.S. at 489.

**AFFIRMED.**